# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
April 13, 2000 Session

## MARILYN E. REEL v. GEORGE C. REEL, JR.

**Appeal from the Chancery Court for Maury County**
**No. 98-486     James T. Hamilton, Chancellor**

---

**No. M1999-01151-COA-R3-CV - Filed Apri1 30, 2001**

---

This is a divorce case ending a twenty-seven year marriage. The trial court made an essentially equal division of property, awarding Wife the marital residence which remained unfinished even though the parties had occupied it since 1985. We modify the property division to provide Wife additional funds with which to complete and repair the residence.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed as Modified and Remanded.**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., and WILLIAM B. CAIN, JJ., joined.

Peter D. Heil, Nashville, Tennessee, for appellant, Marilyn E. Reel.

Dana Dye, Centerville, Tennessee, for the appellee, George C. Reel, Jr.

## MEMORANDUM OPINION[1]

Marilyn E. Reel ("Wife") and George C. Reel, Jr. ("Husband") were married for twenty-seven years and have two adult sons. At the time of the trial, both parties were fifty years old, both

---

[1] Tenn. R. App. P. 10(b) states:

The Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in a subsequent unrelated case.

were in good health, both had college degrees and Husband had a master's degree, and both were unemployed.

The parties bought a 245 acre farm in Hickman County in 1983. For two and a half years the family lived in a small, old house on the farm while Husband constructed a new house on the property.[2] In 1985, the family moved into the new house which was not finished at that time, remains unfinished, and was in need of repair at the time of the trial in 1999. At the time of trial, the house had some unfinished floors, particle board walls in some areas, a door held in place by a block of wood, exposed wires, unfinished cabinets, drainage problems in the shower, a leaking roof, and drainage problems causing water damage. Wife produced an estimate of $25,000 to complete and repair the house.

The parties had marital difficulties for some time, and had separated for a period in 1989, when Wife moved to Nashville. In 1996, Husband moved from the residence, after the younger son graduated from high school, and informed Wife that he wanted a divorce and would not be returning to the marital home. In 1997, Husband began cohabiting with another woman and assisting her in the construction of a house. In July 1998, Wife filed for divorce, seeking a division of property, alimony, attorneys fees and a restraining order. Shortly thereafter, the court issued an order restraining Husband from "returning to the marital residence and from dissipating, transferring, cashing or disposing of the marital estate in any manner and especially from continuing to place marital assets into the construction of [his girlfriend's] house." Husband paid one half of the mortgage payments on the marital residence during the separation.

Husband admitted spending minimal amounts of money on his girlfriend's house and removing some building materials from the marital residence for the construction of that house, even in violation of the court order restraining him from doing so. He claimed to have no ownership interest in the girlfriend's house.

The trial court awarded Wife the divorce, based on Husband's inappropriate marital conduct, and made an essentially equal division of the real and personal property. Wife was awarded the marital residence and the land, the household furnishings, her retirement and checking accounts, and her car. Husband was awarded his car, his checking and retirement accounts, and some tools. Based upon testimony, the court valued the equity in the real property at $225,000.[3] In order to equalize the distribution, the court awarded Husband a judgment of $137,000,[4] so that the final property division gave Wife $172,900 in assets and gave Husband $167,974. The trial court explained its distribution by finding, "During the marriage both parties worked outside the home, shared equally

---

[2]Husband had previously done historic restoration work and had some expertise in building homes. He built the marital residence as well as building other structures and making improvements on the farm.

[3]The farm was valued at $315, 000 with a mortgage debt of approximately $90,000.

[4]Wife was ordered to pay the $137,000 within 120 days of the entry of the decree. That order was stayed pending this appeal after Wife posted a bond.

in the rearing of their two children and both contributed to the accumulation of the marital assets, approximately Three Hundred Thirty-five Thousand ($335,000.00) Dollars." The court declined to award alimony or attorney fees to Wife.

Wife appeals, raising four separate issues. She contends that, considering her greater financial contribution to the marriage, an equal division of property is not equitable. She also argues that the trial court should have assigned a value to Husband's uncompensated labors during the parties' separation and included that value in the marital estate. Wife submits that the trial court erred by not awarding her alimony *in solido* sufficient to repair her house, and that the court should have awarded her attorney fees.

I.

Upon the dissolution of a marriage, courts are called upon to divide the assets the parties accumulated during the marriage. Such decisions are very fact specific, and many circumstances surrounding the property, the parties, and the marriage itself play a role.

The trial court is charged with equitably dividing, distributing, or assigning the marital property in "proportions as the court deems just." Tenn. Code Ann. § 36-4-121(a)(1). Thus, after the property is classified as either separate or marital, the court is to make an equitable division of the marital property. The court is to consider several factors in its distribution, including the duration of the marriage, the contribution to and dissipation of the marital estate, the value of the separate property, the estate of each party at the time of the marriage, and each party's ability to acquire additional assets and income. Tenn. Code Ann. § 36-4-121(c) (listing the factors to be considered). The court may consider any other factors necessary in determining the equities between the parties, Tenn. Code Ann. § 36-4-121(c)(11), except that division of the marital property is to be made without regard to marital fault. Tenn. Code Ann. § 36-4-121(a)(1).

The court's distribution of property "is not achieved by a mechanical application of the statutory factors, but rather by considering and weighing the most relevant factors in light of the unique facts of the case." *Batson v. Batson*, 769 S.W.2d 849, 859 (Tenn. Ct. App. 1988). An equitable distribution is not necessarily an equal one. *Word v. Word,* 937 S.W.2d 931, 933 (Tenn. Ct. App. 1996). Thus, a division is not rendered inequitable simply because it is not precisely equal, *Cohen v. Cohen*, 937 S.W.2d 823, 832 (Tenn. 1996); *Kinard v. Kinard*, 986 S.W.2d 220, 230 (Tenn. Ct. App. 1998). Similarly, equity does not require that each party receive a share of every piece of marital property. *King v. King,* 986 S.W.2d 216, 219 (Tenn. Ct. App. 1998); *Brown v. Brown*, 913 S.W.2d 163, 168 (Tenn. Ct. App. 1994).

The trial court's goal in a divorce case is to divide the marital property in an essentially equitable manner, and equity in such cases is dependent on the facts of each case. The fairness of a particular division of property between two divorcing parties is judged upon its final results. *Watters v. Watters*, 959 S.W.2d 585, 591 (Tenn. Ct. App. 1997).

3

Because dividing a marital estate is a process guided by considering all relevant factors, including those listed in Tenn. Code Ann. § 36-4-121(c), in light of the facts of a particular case, a trial court has a great deal of discretion concerning the manner in which it divides marital property. *Smith v. Smith*, 984 S.W.2d 606, 609 (Tenn. Ct. App. 1997); *Wallace v. Wallace*, 733 S.W.2d 102, 106 (Tenn. Ct. App. 1987). Appellate courts ordinarily defer to the trial judge's decision unless it is inconsistent with the factors in Tenn. Code Ann. § 36-4-121(c), or is not supported by a preponderance of the evidence. *Brown*, 913 S.W.2d at 168; *Wilson v. Moore*, 929 S.W.2d 367, 372 (Tenn. Ct. App. 1992).

> Appellate review of a division of marital property is *de novo* upon the record with a presumption of the correctness of the trial court's findings of fact. Trial courts have wide discretion in the manner in which marital property is divided, and their decisions are accorded great weight on appeal. The trial court's decision on the distribution of marital property is presumed correct unless the evidence preponderates otherwise.

*Dellinger v. Dellinger*, 958 S.W.2d 778, 780 (Tenn. Ct. App. 1997) (citations omitted).

Wife contends that she made a greater financial contribution to the marriage after the parties acquired the farm, and that, therefore, she is entitled to a greater share of the marital estate. On appeal, she asserts that she is entitled to the entire real property. She also relies on the fact that Husband used marital property and monies, although Husband stated they were minimal, helping his girlfriend build a new home, while the marital home remained unfinished and in disrepair.

Having reviewed the property division herein, and having considered it in light of the relevant factors, we are not persuaded that the "equities between the parties" would be served by an award to Wife of all the equity in the marital real property. However, in view of the long duration of the marriage, and the financial situations of both parties at the divorce, a more equitable distribution of the property should take into consideration the habitability and state of repair of the marital residence where Wife will presumably continue to live. Based upon the testimony at trial regarding the condition of the house and the repairs needed, the property distribution should recognize the $25,000 which Wife will need to spend to bring the house up to acceptable standards.

Because Husband's share of the marital property consists largely of a judgment enforceable against Wife, the appropriate method for making the adjustment is to reduce Husband's judgment of $137,000 by $25,000. Therefore, we modify the award to Husband of a judgment from $137,000 to $112,000. The remainder of the trial court's distribution of marital property is affirmed.[5]

---

[5]Wife also argues that Husband's uncompensated labors for his girlfriend and other friends should be assigned a value and included in the marital estate. She argues that Husband's expertise in construction matters was, in essence, given away during the period the parties were separated. She submits that the unpaid labors are akin to a fraudulent conveyance. *See* Tenn. Code Ann. § 36-4-121(b)(1)(A); *Layne v. Layne*, No. 01A01-9805-CV-00265, 1999 WL 20774 (Tenn. Ct. App. Jan. 20, 1999) (no Tenn. R. App. P. 11 application filed) (affirming a monetary award to the wife for

II.

Wife also asserts that she is entitled to alimony *in solido*, specifically an award of $25,000 in order the make the repairs on the marital residence. Tennessee law provides for three types of alimony: (1) rehabilitative alimony, which provides modifiable, temporary support for a period of adjustment sufficient to enable a dependent spouse to become partially or totally self-sufficient; (2) periodic alimony or alimony *in futuro*, a continuing, but modifiable, support obligation to an economically disadvantaged spouse; and (3) alimony *in solido*, an unmodifiable lump sum award which may be paid over time. Tenn. Code Ann. § 36-5-101(d)(1); *Loria v. Loria*, 952 S.W.2d 836, 838 (Tenn. Ct. App.1997).

In determining whether to award spousal support, the type of support, and the amount and duration thereof, courts must consider a number of factors. *See* Tenn. Code Ann. § 36-5-101(d)(1) (listing the factors to consider). The initial determination must be whether one spouse is economically disadvantaged relative to the other. *Id.* In addition, the two most important factors in setting spousal support are the demonstrated need of the disadvantaged spouse and the obligor spouse's ability to pay. *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn.1995); *Varley v. Varley*, 934 S.W.2d 659, 668 (Tenn. Ct. App.1996). Because support decisions are factually driven and involve considering and balancing numerous factors, appellate courts give wide latitude to the trial court's discretion. *Cranford v. Cranford*, 772 S.W.2d 48, 50 (Tenn. Ct. App.1989).

In denying Wife's request for alimony, the trial court stated:

In the instant case this Court finds that neither party is economically disadvantaged and both parties are healthy, possess college degrees and are capable of earning a substantial living as well as the fact that the Wife will physically retain the larger share of marital assets.

We agree with the trial court's findings. Because we have already adjusted the property division to provide for needed repairs Wife's house, we can find no basis for a finding that Wife is economically disadvantaged. Additionally, Wife's request for alimony was for the money needed to make the repairs, and we have modified the distribution of property to take into account that amount for the same purpose.

Wife also argues that she is entitled to have her attorney fees paid. Attorney fees are considered a form of alimony *in solido*, and the courts are to consider the same factors as when making an alimony award. *Herrera v. Herrera*, 944 S.W.2d 379, 390 (Tenn. Ct. App.1996). Thus, the trial court appropriately relied on the same factors to deny attorney's fees as those it used in determining Wife's alimony request. A trial court has broad discretion regarding the award or denial of attorney's fees, and we will not interfere with the trial court's decision absent a clear showing that

her share of land fraudulently conveyed by the husband). We decline to extend the concept of "fraudulent conveyance" to include a party's uncompensated labor.

5

it abused its discretion. *Aaron v. Aaron*, 909 S.W.2d at 411. Having reviewed the entire record, we cannot say that the trial court abused its discretion in denying Wife's request for attorney's fees.

III.

In conclusion, we modify the property division to reflect an additional $25,000 for Wife. Husband's judgment is reduced to $112,000. The trial court is affirmed on all other issues. This case is remanded to the trial court for such further proceedings as may be required. Costs are taxed equally to both parties, for which execution may issue if necessary.

                                         _____

                                         PATRICIA J. COTTRELL, JUDGE